UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |
|---|---|
| MIGDALIA APONTE, DANIEL APONTE DAVID MARRS, and CLAIRE MARRS, Plaintiffs, <br><br> v. <br><br> WYNDHAM VACATION RESORTS, INC., Defendant. | Case No. 5:15-cv-01154 |

## MEMORANDUM OPINION

Before the Court is defendant Wyndham Vacation Resort's (Wyndham's) motion to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6). The complaint lists five causes of action: (1) Fraud and Fraud in the Inducement, (2) Breach of Contract, (3) Unjust Enrichment, (4) Breach of Fiduciary Duty, and (5) Deceptive Trade Practices. Wyndham argues that none of these causes of action are sufficiently pled under Fed. R. Civ. P. 8 and 9. In the alternative Wyndham argues that the claims are barred by the statute of limitations. For the reasons specified herein, the Court will grant defendant's motion due to plaintiffs' insufficient pleading under Fed. R. Civ. P. 8 and 9. The Court does not find it necessary to reach the question of the statute of limitations.

### I.   BACKGROUND

Plaintiffs purchased timeshare interests from Wyndham. Plaintiffs appear to allege the timeshare interest is a small interest in a "home base" of a particular Wyndham property. Am. Comp. ¶¶ 4.29, 4.47, 4.74 ECF No. 8; *but see* Am. Comp. at ¶ 4.31. Individuals with ownership

1

interests receive "points" based upon their interest. Those points are renewed annually or biennially and can be used to reserve accommodations at Wyndham locations. *Id.* at ¶¶ 4.3, 4.6.

The complaint alleges that as part of the sales process, Wyndham told plaintiffs to "sign and/or fully understand the legal obligations and effects" of a number of documents concerning the timeshare. *Id.* at ¶ 4.30. Plaintiffs allege they were subject to "high pressure" techniques both with regard to purchasing the initial timeshare interest, *id.* at ¶ 4.18, and later to upgrade their interest or accept "poor quality" facilities, *id.* at ¶ 4.35. Plaintiffs allege they were told they had a preference to stay at their home base and that "other locations at the same level and quality" were also available. *Id.* at ¶ 4.34. Rather than stay at their home base or another location of similar quality, plaintiffs were sent to "substandard properties that were not at all as promised." *Id.* at ¶ 4.37. Plaintiffs claim they were then pressured to upgrade, and even after upgrading faced the same difficulties and pressures. *Id.* at ¶¶ 4.37-4.39.

Plaintiffs further argue that Wyndham made material misrepresentations throughout this process and that Wyndham, or at least its sales transactions, were "extremely opaque and dubious." *Id.* at ¶¶ 4.42-4.43. They also argue that Wyndham changed one or more provisions, *id.* at ¶¶ 3.12,[1] 4.13, of its timeshare program; claim Wyndham breached a fiduciary duty, *id.* at ¶ 3.12; and take issue with the website, *id.* at ¶ 4.14.

The complaint discusses two plaintiffs, Aponte and Marrs.[2] The complaint alleges that Marrs purchased an interest in the "Grant Desert Resort" and, it seems, later "upgraded" to an

---

[1] "3.12" is likely a typographical error as it falls between 4.11 and 4.13 on page six of the amended complaint.
[2] The complaint uses the terms "Aponte" and "Marrs" and treats both terms as singular and plural. The complaint is also internally inconsistent on plaintiffs' names, *compare* ¶¶ 1.1 and 1.2 *with* ¶ 4.44 et seq. The Court assumes the complaint is speaking about both Migdalia and Daniel Aponte when it reads "APONTE" and both David and Claire Marrs when it reads "MARRS." The Court has adopted the complaint's use of Aponte and Marrs in the singular, factually inaccurate as that may be.

2

interest in the "Myrtle Beach Wyndham Resort." In 2013, Marrs stayed at the "Poconos Mountains" which Marrs states "looked nothing like what they were promised and what they expected." *Id.* at ¶ 4.75. After complaining to management Marrs was moved to another location, but allege that it was also substandard compared to the home base. *Id.* Aponte purchased an interest in "La Cascada" in Texas. Aponte maintains that in 2009 he was given a room in New York City that had only two single beds and a shared bathroom facility for the floor. *Id.* at ¶ 4.50.

The complaint does not appear to offer direct comparisons, i.e. square footage, amenities, etc., between the locations Marrs and Aponte stayed and those places they allege they were promised. Indeed, it appears neither Aponte nor Marrs ever stayed at their home base. Nonetheless, both claim Wyndham caused them injuries and damages. The complaint is not always clear, nor is it clear how all the various facts or conclusions in the body of the complaint are linked to the causes of action. For this reason the Court will, as necessary, discuss additional allegations from the complaint in the sections below.

## II.   LEGAL STANDARDS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

When fraud is alleged a plaintiff must plead in accordance with Fed. R. Civ. P. 9. Fed. R. Civ. P. 9(b). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). This requirement is applied "with force, without apology" and "stands as an exception to an overarching policy of immediate access to discovery." *Id.* at 178. Furthermore, the Circuit has noted "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *Id.*

### III.   DISCUSSION

Plaintiffs fail to sufficiently plead a claim for several interrelated reasons. The Court has not adopted defendant's structure of addressing each cause of action in turn, as some issues are common to multiple causes of action.

4

### 1. Plaintiffs Do Not Sufficiently Plead How Defendant's Representations Were Fraudulent.

Central to several of plaintiffs' claims is the idea that defendant engaged in fraudulent behavior by promising plaintiffs that they could stay at their home base or a similar location. Plaintiffs did not stay at their home base, but did stay at other locations. For Aponte that was a location in New York City and for Marrs that was the Poconos Mountains.

The only comment in the complaint about the location in New York City is that Aponte was surprised to find the room had only two single size beds and that there was a shared bathroom facility for the entire floor. Am. Comp. at ¶ 4.50. Though there are more conclusions regarding the "Poconos Mountains," there are even fewer facts. It appears there were two locations, the first "looked nothing like what . . . [was] promised and what [was] expected" and was "substandard when compared to the . . . home base." *Id.* at ¶ 4.75. However, after complaining, Marrs was moved from this location to another location. That location was "also a [sic] substandard compared to the home base," was "not at all what was promised" and was not an enjoyable place to stay. *Id.*

To plead a claim relating to fraud, plaintiffs needed to plead in a nonconclusory manner the contents of the fraudulent statement. *Williams*, 112 F.3d at 177. Here, the allegedly fraudulent statements appear to be that plaintiffs could stay at their home base or a similar property. Pleading merely that the locations plaintiffs stayed were "substandard" is "conclusory" and "threadbare." *See Iqbal*, 556 U.S. at 678. Indeed, accepting all plaintiffs' factual allegations as true, the complaint recites they were told that that could stay at "$x$ or something like $x$," that they stayed somewhere, and that the place was not as good as $x$. Plaintiffs do not provide details of what $x$ was or is, in what ways the places they stayed were not as good as $x$, nor, in the case of the Poconos Mountains, any facts at all about the place they stayed. While the Court cannot speak to plaintiffs' subjective expectations about their stay, such a complaint is insufficient as a matter of law as it

never articulates facts that show the defendant's claim, *x* or something like *x*, to be false. That is to say, plaintiffs assert things to be *substandard* both without facts and without establishing what would be considered *standard*. The allegations are, in a word, conclusory. Had plausible facts been alleged, the Court would have been required to accept them as true for the purposes of this motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiffs are not asking for a favorable interpretation of facts here, they are asking for the Court to divine facts from conclusory statements and subjective impressions.

With regard to the New York City location, plaintiffs do allege facts: that there were two single beds and a shared bathroom facility. Unfortunately, this is insufficient to cure the problem identified above. It is not clear how the New York location is different in quality from what plaintiffs allege they were promised. The Court declines to imagine the details of a promise from a conclusory statement that rooms were subpar and a single sentence description of only one of two things which must be compared.[3]

This flaw is dispositive for two of the causes of action. With regard to the first cause of action, Fraud and Fraud in the Inducement, plaintiffs would need to plead with specificity that defendant's statements about the types of locations they could stay were fraudulent. The conclusory statements they made are insufficient. With regard to the second cause of action, Breach of Contract, plaintiffs would need to sufficiently plead the distinction between the promised and delivered services to show breach. As noted, they did not do so.

---

[3] Notably, it is not clear Aponte actually stayed in the room or location described. The complaint alleges he called and was surprised to hear the description of the rooms in question. The Court infers those were the lodgings Aponte was provided not, like Marrs, that Aponte requested the lodgings be changed and they, in fact, were.

### 2. Plaintiffs Do Not Show There Is or Was a Fiduciary Duty between Themselves and Defendant.

Plaintiffs maintain that based on the "special circumstances" of the case, the relationship of the parties, and the "superior knowledge of timeshare management" by Wyndham, there was a fiduciary duty to plaintiffs. Am. Comp. at ¶ 9.2. Plaintiffs have not sufficiently pled facts to show a fiduciary relationship exists, or, if such a relationship does exist, they have not sufficiently pled that it was breached.

First, it is not clear what breach or breaches of a fiduciary duty plaintiffs are alleging. At various points in the complaint, plaintiffs discuss the lodging they received, changes to the timeshare program, sales tactics, and Wyndham's website. The complaint merely reads that Wyndham charged fees and that those fees were "not used and/or accounted for the purposed WYNDHAM has represented to PLAINTIFFS is needed for [sic]." *Id.* at ¶ 9.4. Such a conclusory statement is insufficient to show a breach of a fiduciary duty to the extent one was ever formed.

Moreover, plaintiffs' pleading is insufficient to show a fiduciary duty between plaintiffs and defendants. Fiduciary relationships can be formal or informal. *Meyer v. Cathey*, 167 S.W.3d 327, 330-331 (Tex. 2005). There does not appear to be any argument that a formal fiduciary duty existed in this case, such as an attorney-client relationship.[4] Rather, the complaint speaks of the "special circumstances" and the "superior knowledge" of Wyndham—seemingly an informal fiduciary relationship. With regard to these informal fiduciary relationships, the Texas Supreme Court has written: "we do not create such a relationship lightly. To impose an informal fiduciary

---

[4] To the extent plaintiffs allege a legal fiduciary duty due to Wyndham being a co-owner of condominiums, the Court finds the reasoning in *Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 735 (S.D. Tex. 2010) (holding plaintiffs failed to plead a fiduciary relationship between a condominium board and resident when allegations were conclusory) and *Harris v. Spires Council of Co-Owners*, 981 S.W.2d 892, 898 (Tex. App. 1998) (finding there was no fiduciary relationship between a condominium and a resident) persuasive.

7

duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* (internal citations omitted).

Surely regular payment for a service is not, in and of itself, sufficient to create a fiduciary responsibility. Yet here, plaintiffs appear to argue that because they were paying various fees to be part of Wyndham's program, Wyndham had a fiduciary relationship with them. The Court does not feel the need to elucidate why turning every subscription or monthly fee based business model into a fiduciary relationship is antithetical to "not creating such . . . relationship[s] lightly," *id.*, and instead looks to the complaint for a limiting factor. While the complaint alleges there are special circumstances and mentions the relationship of the party, it does not articulate what those are or how they lead to a fiduciary relationship. What remains is Wyndham's superior knowledge of timeshare management. This cannot be the delimitation. The Court fails to see how the purchaser knowing less about a product or service than the business they are purchasing it from can create a fiduciary duty. Presumably most companies know their product or services better than their customers. Furthermore, it is not clear how Wyndham would be expected to know if a given customer was a sophisticated timeshare purchaser, presumably meaning there would be no fiduciary relationship under plaintiffs' test, or one with limited knowledge, which would create a fiduciary relationship. The Court finds this unworkable, leaving plaintiffs without a sufficiently articulated basis for a fiduciary relationship.

### 3. Plaintiffs Do Not Articulate the Factual Basis for Their DTPA Claim

Plaintiffs claim they will show that Wyndham engaged in false, misleading, or deceptive action, practices, and/or omissions in violation of the Texas Deceptive Trade Practices Act (DTPA). Their statement is conclusory and they do not, in fact, plead sufficient facts for this cause

of action. First, it is again unclear what plaintiffs are alleging Wyndham actually did. While plaintiffs use conclusory language, e.g. that Wyndham engaged in "unconscionable actions," Am. Comp. at ¶ 10.5, it is not clear what facts are unconscionable.

To the degree plaintiffs allegations are linked to the quality of the locations in which they stayed, their pleadings are insufficient for the reasons set forth in part III(1), above. To the extent plaintiffs object to defendant using various sales techniques to induce them to purchase the timeshare interest in the first place, it is not clear—other than the complaint about the location of their stays—what plaintiffs allege was actually deceptive. As the DTPA cause of action is predicated upon conclusory statements rather than "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the Court finds that is was not sufficiently pled.

### 4. Plaintiffs' Claim of Unjust Enrichment Cannot Stand on Its Own

Given that plaintiffs' other causes of action are not sufficiently pled, their claim of unjust enrichment fails. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Here, for the reasons set forth above, plaintiffs do not sufficiently allege facts that Wyndham obtained a benefit by fraud, duress, or the taking of an undue advantage. While there is no doubt that plaintiffs conclude these things, the complaint does not include a factual recitation that meets the requirements of Fed. R. Civ. P. 8 and 9.

Similarly, in a claim for money had and received, "a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *MGA Ins. Co. v. Charles R.*

*Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App. 2012). For the reasons specified above, plaintiffs do not sufficiently plead any cause of action relating to fraud, breach of contract, violation of a fiduciary duty, or violations of the DTPA. The Court does not see any facts alleged in this cause of action that provide an independent basis for believing Wyndham holds money that in good conscience belongs to either plaintiff. Moreover, as *MGA Ins.* describes this claim in the language of equity, it must be dismissed in light of plaintiffs' failure to sufficiently plead other causes of action. *Gonzalez Equities, Ltd. v. Select Portfolio Servicing, Inc.*, No. SA-14-CV-1087-XR, 2015 WL 3407357, at *6 (W.D. Tex. May 26, 2015) ("A court must dismiss claims for equitable relief where no underlying cause of action from the complaint survives.").

## IV.    CONCLUSION

In granting defendant's motion, this Court makes no statement about the veracity of plaintiffs' claims. Before this Court is not a factual question to be resolved—that is not the role of the Court in this context—but rather the legal question of whether plaintiffs complied with the requirements of FED. R. CIV. P. 8 and 9. Plaintiffs needed to plead facts, not assert legal conclusions. In the fifty-four pages of their amended complaint, they did not allege facts sufficient for their causes of action. For that reason, defendant's motion to dismiss will be granted in a separate order issued on this date.

Date: 10/12/16

ROYCE C. LAMBERTH
United States District Judge

10